**E-FILED**
Tuesday, 15 May, 2007 11:44:31 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JORDAN T. BANTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:06-cv-02211 |
| | ) | |
| MARY DOWDS, individually and as an agent | ) | |
| of KIRBY FOODS, INC., d/b/a ARTHUR | ) | |
| I.G.A. FOODLINER, KIRBY FOODS, INC., | ) | |
| d/b/a ARTHUR I.G.A. FOODLINER, | ) | |
| MICHAEL GOODMAN, Arthur Chief of Police, | ) | |
| individually and officially, and ROGER HANSEN, | ) | |
| Arthur police officer, individually and officially, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

NOW COMES the Defendant, KIRBY FOODS, INC., d/b/a ARTHUR I.G.A.

FOODLINER (hereinafter "Kirby Foods"), by its attorney Lorna K. Geiler of Meyer Capel, A

Professional Corporation, and provides its Response to Motion for Leave to File Third Amended

Complaint.

### Introduction

Plaintiff's filing of a Motion for Leave to file Third Amended Complaint (less than a

month after his request to file a Second Amended Complaint) only serves to unnecessarily

protect otherwise untimely litigation. As of the filing of this Response, almost two years have

passed since the single act of harassment is alleged to have occurred. At every stage of this

litigation, the Plaintiff has demonstrated a complete lack of diligence. The Plaintiff's constant

delays have wasted this Court's time and efforts (*see* Order on Motion for Extension of Time to

File Response/Reply dated March 29, 2007 (#16,)) and increased the attorneys fees incurred by

Kirby Foods, and undoubtedly the other Defendants hereto.

While Kirby recognizes that under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend a pleading "shall be freely given," that freedom carries a *caveat*. Leave should only be given "when justice so requires." In this case, the Plaintiff has abused the freedom anticipated by federal law, at the expense of the time and resources of the Court, the EEOC and the Defendants herein. Ultimately, the Plaintiff was required to file two charges before the EEOC, has filed four complaints before this Court (#1, #2, #17, and #19,) and filed an untimely request for an extension of time (# 8,) without any reasonable explanation for his failure to timely file a valid complaint. In fact, not a single fact is contained in the proposed Third Amended Complaint that could not have been included in the original Complaint. Clearly, the Plaintiff's strategy is to sit back and wait for the Defendants to educate him in the law via their responses to his deficient pleadings.

For the reasons stated below, the Court should not countenance the Plaintiff's blatant lack of diligence, and thus, should deny the Motion for Leave to File Third Amended Complaint (#19.)

### Procedural Background

It is well established that a "district court may properly deny a motion to amend as futile if the proposed amendment would be barred by the statute of limitations." *Rodriguez v. U.S.*, 286 F.3d 972, 980 (7th Cir. 2002). Likewise, "a district court may deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991).

In the instant case, only Counts VI, VII and IX are directed against Kirby Foods. As fully

-2-

set forth below, Counts VI and VII are barred by the statute of limitations stated in 42 U.S.C. 2000e-5(e), and Count IX fails to correct the deficiencies previously outlined by Kirby Foods. Therefore, the Court should deny the Motion to File Third Amended Complaint as futile.

**Argument**

1.    Counts VI and VII are Time Barred

Even giving the Plaintiff the benefit of the doubt, and allowing his November 2, 2006 EEOC charge to relate back to his unverified May 5, 2006 EEOC charge, one fact remains: specifically, May 5, 2006 is 310 days after June 29, 2005, the date of the single isolated alleged act of harassment. No matter how many opportunities the Plaintiff is given to amend his pleading, he will never be able to bend time to make up for the simple fact that his EEOC charge was filed too late; and therefore, his Title VII claims are time barred.

Title VII provides that a charge for discrimination must be filed with the EEOC within three hundred days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1), *see also Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005). Simply stated, "[f]ailure to file a timely charge with the EEOC precludes a subsequent lawsuit under Title VII." *Beamon* at 411 F.3d at 860.

Moreover, the court in *Beamon* explained:

> For purposes of this statute of limitations, discrete discriminatory employment actions such as termination, failure to promote, denial of a transfer, or refusal to hire are deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or are connected with other acts. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-11, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Thus, each discrete discriminatory act "starts a new clock for filing charges alleging that act," *and charges not filed within 300 days of the act in question are not actionable.*

[Emphasis added.]

Plaintiff's EEOC charge filed on May 5, 2006 alleges that the incident which forms the basis for his Title VII claims occurred on June 29, 2005 well beyond the statutory limitation. However, Plaintiff attempts to extend this period by claiming (1) he was unaware of Kirby Foods' retaliatory actions until July 20, 2005 when he purportedly figured out he had been fired; and (2) he was unaware that his civil rights had been allegedly violated until July 9, 2005 when he first met with his attorney. Simply stated, both of these arguments are without merit.

First, it is clear, despite the Plaintiff's self serving argument, that Plaintiff's employment at the Arthur I.G.A. Foodliner was terminated effective June 29, 2005 (see a copy of the Affidavit of Deanna Williams, ¶¶ 6 &7, attached hereto and incorporated herein as Ex. 1, previously filed as an attachment to Document No. 11). Neither Plaintiff's EEOC charge nor his complaint plead any facts which explain how he could have possibly believed that he was still employed by Kirby Foods through July 20, 2005 when he never worked another day at the store following the alleged June 29, 2005 incident. Such a claim is literally incredible.

Kirby Foods has included with this Response a copy of an Affidavit of Deanna Williams that was previously filed in this case that included copies of its store work schedules for the period of April 24, 2005 to July 24, 2005 (attached hereto and incorporated herein as Ex. 2). A review of these schedules confirms that the Plaintiff (referred to as "Jordan" on the schedules) is listed on the weekly schedule through the week ending July 4, 2005. However, the time for "Jordan" on June 29, 2005 has been modified to show that he left at 5:30 p.m. rather than his scheduled 7:00 p.m. Also, the remaining shifts for that week have been crossed off, and the name "Jordan" is absent on all subsequent weekly schedules through July 24, 2005. This fact,

-4-

and the fact Plaintiff never returned to work after the alleged incident does not leave Plaintiff with any reasonable cause to believe he was still employed by I.G.A. on July 20, 2005.

Like the Plaintiff's curious confusion over the date of the termination of his employment, the Plaintiff's argument that the three hundred days allowed by statute for the filing of an EEOC charge should be tolled is unavailing. In the proposed Third Amended Complaint Counts VI and VII, at ¶ 7, Plaintiff has added an unverified and unsupported claim that he did not know his civil rights had allegedly been violated until July 9, 2005 when he purportedly first met with his attorney.

Plaintiff makes this allegation despite also alleging that on June 29, 2005, Mary Dowds allegedly: (1) sat and moved extremely close to Plaintiff and placed her hand inside his pants and on his genitals; (2) Plaintiff declined Mary's advances, by shoving her off of him and informing her that he would report her to the authorities; (3) she then stood up and unzipped her pants and exposed her genitals to him, stating "You know you want it"; and, (4) Plaintiff got up to leave the room and she ordered him to go home for the day.

Despite Plaintiff's claim that Kirby Foods had "no signs in any conspicuous place informing employees of their rights to redress for sexual harassment" had any merit (proposed Third Amended Complaint Count VI & VII at ¶ 7), Plaintiff's allegation that he was unaware that his rights may have been violated (by the alleged actions of Mary Dowd) until he met with an attorney, are betrayed by his other allegations in Counts VI and VII of the proposed Third Amended Complaint. Initially, according to the Plaintiff's own allegation, when he purportedly rebuffed the alleged advances by Mary Dowd, Plaintiff "inform[ed] her that he would report her to the authorities." (Proposed Third Amended Complaint Count VI & VII at ¶ 3.) Obviously, the

-5-

plaintiff's direct allegation establishes that, even in the absence of a notice sign, he was aware of the purportedly wrongful actions of Dowd, and possessed sufficient information to put him on notice that her conduct should be reported to some unnamed "authority."

In the end, the alleged harassment in the instant case was a single overt act of physical contact. Certainly the Plaintiff was aware of the alleged harassment at the time that it occurred, and maintains he knew his rights had purportedly been violated. Simply stated, there is no basis for equitably tolling the statute of limitations in this case.

2.    Malicious Prosecution Fails Against Kirby Foods

It is axiomatic under Illinois law that the Worker's Compensation Act (hereafter "IWCA") provides the exclusive remedy for an employee's claim for injuries against his employer. 820 ILCS 305/5(a). In *Meerbrey v. Marshall Field and Co., Inc.*, 139 Ill.2d 455, 564 N.E.2d 1222, 151 Ill.Dec. 560 (1990), the Illinois Supreme Court held that an employee's claim for malicious prosecution was barred by the exclusivity provisions of the Worker's Compensation Act.

In *Meerbrey,* an employee was accused of stealing from his employer, and ultimately found not guilty. However, the *Meerbrey* court held that the plaintiff's injury from malicious prosecution was "accidental" from the employee's point of view. Further, the court stated:

> Such injuries are also accidental from the employer's point of view, at least where the employer did not direct or expressly authorize the co-employee to commit the assault. Because injuries intentionally inflicted by a co-worker are accidental from the employer's point of view, the employer has a right to consider that the injured employee's sole remedy against the employer will be under the workers' compensation statute. *Id.* at 139 Ill.2d at 463-464.

-6-

There are exceptions to the IWCA's exclusivity provisions. Specifically, the "exclusivity provisions will not bar a common law cause of action against an employer, however, for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." *Id.* However, the fact a manager or supervisor "was acting within the scope of his or her authority does not equate to authorization by the employer for the commission of an intentional tort." *Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago*, 104 F.3d 1004, 1017 (7th Cir.1997).

Federal decisions within this region have generally held that an individual serving as a manager or supervisor does not necessarily serve as an alter ego of the corporation, see *Walker v. Doctors Hospital of Hyde Park*, 110 F.Supp.2d 704, 715 (N.D.Ill.2000)(when a tortfeasor is merely a foreman, supervisor or manager attributing responsibility to the employer defeats one of the purposes of the [IWCA] shielding the innocent employer from unexpected liability) and *Sanfelice v. Dominick's Finer Foods, Inc.*, 899 F.Supp. 372, 377 (N.D.Ill.1995)(the fact that a tortfeasor is a supervisor or manager does not make him an alter ego).

Both federal and state courts have labored to define "alter ego" in the corporate context. In *Daulo v. Commonwealth Edison*, 938 F.Supp.1388 (N.D.Ill.1996), the Northern District held that in order to impute the conduct of a member of a management team's to the employer such that a Title VII claim would be proper, the supervisor had to first be considerably high up on the corporate ladder and such that he would be part of its decision making process. 938 F.Supp. at 1401. If he is part of the decision making level, then he will be considered an agent for the corporation for a charge of Title VII violations. *Id.* Illinois's Fifth District in *Toothman v. Hardee's Food Systems, Inc.*, 304 Ill.App.3d 521, 710 N.E.2d 880, 238 Ill.Dec. 83 (5th Dist.

1999) went even further in defining the relationship when they wrote:

> Where the employer uses an alter ego/manager to conduct a
> particular portion of its business . . . and gives that manager
> complete authority over the operation of that business, but does not
> provide the manager with any instructions against committing
> intentional torts and allows the manger to use her own judgment in
> resolving all of the issues that occur in that business, then the
> employer has constructively authorized any and all of the actions of
> its manager and cannot shield itself from common law liability via
> the beneficial provisions of the [IWCA], 304 Ill.App.3d at 530-
> 531.

In the case *sub judice*, the Plaintiff has amended his prior Respondent Superior count to a

malicious prosecution count against IGA. He has modified his earlier arguments in an attempt to

meet the *Meerbrey* exception to the exclusivity provision by claiming Mary Dowds was acting as

an alter ego to IGA when carried out the alleged tortious conduct, and that Kirby Foods, Inc.

authorized her alleged tortious conduct against the Plaintiff (proposed Third Amended

Complaint, Count IX). However, Plaintiff's proposed Third Amended Complaint fails because

he does not adequately plead any allegations that would put Kirby Foods on notice of how

Dowds served in an alter ego capacity or how Dowds' alleged conduct was expressly authorized

either by express consent or ratification.

While Plaintiff does not have to allege all of the facts involved in his claim and can plead

conclusions, "any conclusions pled must provide the defendant with at least the minimal notice

of the claim, and the plaintiff cannot satisfy federal pleading requirements merely by attaching

bare legal conclusions to narrated facts which fail to outline the base of his claim," *Scott

Aviation, Inc. v. Dupage Airport Authority*, 393 F.Supp.2d 638, 642-643 (N.D.Ill.2005) and

*Perkins v. Silverstein, et al.*, 939 F.2d 463, 466-467 (7th Cir.1991)(absence of facts to support

Plaintiff's claim renders allegations mere legal conclusions subject to dismissal).

In the instant case, Plaintiff merely makes the bold assertion that Dowds' position constituted an alter ego relationship solely on the premise that Kirby Foods, Inc. retained Dowds as a "night manager" and a "supervisor and employer (i.e., alter ego) for Kirby Foods" (Count IX ¶ 16). Plaintiff does not allege even a single fact showing that Dowds served in a position on par with the decision-making level of Kirby Foods, Inc. Neither does he allege any other facts to support his claim, including but not limited to, that Dowds maintained significant control over the (1) hiring and firing of all employees; (2) scheduling; (3) bookkeeping and accounting; (4) inventory; or (5) the operation procedures for Kirby Foods, Inc.

Thus, Plaintiff does not establish direct liability against Kirby Foods through the alleged acts of Dowds because the facts alleged do not adequately reflect an alter ego relationship ever existed. Plaintiff further fails to adequately plead that Kirby Foods commanded or expressly authorized Dowds to maliciously prosecute him. He limits his pleading to the bald legal conclusion that Kirby Foods, Inc. authorized the alleged tortious conduct by retaining Dowds' employment as night manager (Count IX, ¶¶ 16 & 17). These allegations do not support the federal notice pleading standard noted above.

Rather than trying to bring any support to a claim of Kirby Foods, Inc.'s authorization, Plaintiff throws in an alternative argument to Count IX that even if Dowds' conduct were considered unauthorized by Kirby Foods, Inc., its "failure to repudiate a tortious action of an agent or employee is tantamount to ratification of said action." (Count IX, ¶ 17). Plaintiff's argument sounds in agency law where he apparently incorporates the employer/employee relationship to principal/agent. Plaintiff's unsupported position is that an employer's failure to

-9-

condemn an unauthorized action is presumably the same as ratification. Yet, a review of the law in this area reveals that the Plaintiff's argument must be rejected.

The principle of ratification under a principle/agency relationship is it "can" be found on a principle's silence, but even then ratification is not absolute, but determined on the circumstances of the case, see *Sphere Drake Insurance Ltd. v. American General Life Insurance Co.*, 376 F.3d 664, 677 (7th Cir.2004). Ratification is considered the equivalent of authorization, but it only occurs after a principal gains knowledge of an unauthorized transaction but then retains the benefit or otherwise takes a position inconsistent with non-affirmation. *In re Ostrom-Martin, Inc. V. First National Bank of Chillicothe*, 202 B.R. 267, 274 (Bkrptcy.C.D.Ill.1996). A review of the issue of ratification on agency principles for an employer/employee relationship has been very limited in decisions within this region.[1]

The 5th Circuit, however, has addressed a similar issue to Plaintiff's position in conjunction with Texas law. There it was held that an "employer's failure to repudiate its employee's tortious act may sometimes establish ratification, *Skidmore v. Precision Printing & Packaging Inc.*, 188 F.3d 606, 614-615 (5th Cir.1999). In cases of an employer/employee relationship, ratification leading to the direct liability of an employer does includes a failure to repudiate an employee's unlawful acts, but it also demands the employer be in possession of the known facts necessary to repudiate the employee's conduct, *Id.;* also see *Verhelst v. Michael D's*

---

[1] A review of Federal and Illinois decisions within this region only brought up one case, *Chalet Ford, Inc. v. Red Top Parking, Inc.*, 62 Ill.App.3d 270, 379 N.E.2d 88, 19 Ill.Dec. 573 (1st Dist. 1978), which was a bailment action over a stolen vehicle from a parking garage. The principle owner claimed he was not liable for the stolen property when his employees' conduct went against his corporate policies. The court disagreed and found that the principle's operation of the business was inconsistent with those policies, and held, "Defendant's failure to repudiate the actions of its employees thus constituted a ratification of the attendants' acts and defendant is bound by them." 62 Ill.App.3d at 274.

*Restaurant San Antonio, Inc.*, 154 F.Supp.2d 959, 966 (W.D.Tex.2001)(neither the mere

retention of an employee or denial of liability can establish ratification). Plaintiff pleads no facts

to show that Kirby Foods, Inc. possessed any knowledge of an unauthorized act or conducted

itself in any manner that ratified Dowds' alleged tortious acts to meet the "command or expressly

authorized" provision of *Meerbrey*. The retention of Mary Dowds as an employee of Kirby

Foods, Inc. alone does not support such a conclusion either. Therefore, Plaintiff's recovery is

limited to the exclusive remedies provision of the IWCA.

When the allegations of Count IX of the proposed Third Amended Complaint are

scrutinized under the precedent and exceptions established by *Meerbrey* with the subsequent

decisions thereto, it is clear that Count IX of the proposed Third Amended Complaint would not

survive a Rule 12(b)(6) motion.

**Conclusion**

For all of the reasons set forth above, the time has come in this case for the Court to

declare that enough is enough. The Plaintiff's constant delays and abuse of civil procedure

should be halted. Thus, Kirby Foods urges this Court to deny the Motion for Leave to File Third

Amended Complaint as futile.

Respectfully submitted,

_____**s/Lorna K. Geiler**_____
Lorna K. Geiler, No. 7372814
Attorney for the Defendants
Meyer Capel, A Professional Corporation
306 W. Church Street
Champaign, IL 61820
Telephone: (217) 352-1800
Fax: (217) 352-1083
lgeiler@meyercapel.com

-12-

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2007, I electronically filed the foregoing **Defendant Kirby Foods, Inc., d/b/a Arthur I.G.A. Foodliner's Response to Motion for Leave to File Third Amended Complaint** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Jason R. Craddock
P.O. Box 1514
Sauk Village, IL 60412
captain1970@thelifeline.net

Keith E. Fruehling
James C. Kearns
Heyl Royster Voelker & Allen
P.O. Box 129
Urbana, IL 61801-0129
kfruehling@hrva.com
jkearns@hrva.com

I also hereby certify that I have mailed by United States Postal Service the above mentioned document to the following non CM/ECF participants:

XXX

Respectfully submitted,

_____s/Lorna K. Geiler_____
Lorna K. Geiler, No. 7372814
Attorney for Defendant
Meyer Capel, A Professional Corporation
306 W. Church Street
Champaign, IL 61820
Telephone: (217) 352-1800
Fax: (217) 352-1083
lgeiler@meyercapel.com

STATE OF ILLINOIS       )
                                   )  ss

COUNTY OF CHAMPAIGN    )

        I, Deanna Williams, being first duly sworn, on oath depose and state:

1.      My name is Deanna Williams.
2.      I have been employed with Kirby Foods, Inc., since 1985. I have been the Human Resources Manager for Kirby Foods, Inc., since 1997.
3.      I am familiar with Jordan Banton, the Plaintiff in Case Number 06-CV-2211.
4.      Mr. Banton was terminated from his employment with Kirby Foods, Inc., on June 29, 2005. (Attached hereto and incorporated herein as Exhibit A are the true and accurate employee schedules from the Arthur I.G.A. Foodliner from April 2005 through July 24, 2005, Jordan Banton's tenure with Arthur I.G.A. Foodliner.)
5.      Mr. Banton was consistently scheduled to work four (4) or five (5) days, five (5) hours per day through the week ending July 2, 2005.
6.      On June 29, 2005, Mr. Banton was scheduled to work until 7:00 p.m.; however, as a result of his misconduct, he was terminated at 5:30 p.m. and marked off the schedule for the balance of the week.
7.      Mr. Banton was never put back on the schedule. He was terminated on June 29, 2005.

        FURTHER AFFIANT SAYETH NOT.

                                      *Deanna M. Williams*
                                      Deanna Williams

Subscribed and sworn to before me

this 12th day of March 2007.

           *Tia L. Hoover*
Notary Public

OFFICIAL SEAL
TIA L HOOVER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/24/08

EXHIBIT

1

# Employee Schedule

APRIL — MAY

| DEPARTMENT NAME | 24 SUNDAY | 25 MONDAY | 26 TUESDAY | 27 WEDNESDAY | 28 THURSDAY | 29 FRIDAY | 30 SATURDAY | MAY 1 SUN TOTAL |
|---|---|---|---|---|---|---|---|---|
| Elijah | X | X | 4-10 | 4-7 | 4-7 | X | 4-10 | 12-5 |
| Zach | OFFICE 8:30 1030 | — | ck 4-10 | ck 4-10 | — | OFFICE 4-1030 | X | X |
| Jacob | 8-12 | OFFICE 4-1030 | — | OFFICE 4-1030 | 4-10 | — | 7-2 | OFFICE 230 1030 |
| Devan | 12-5 | 4-10 | — | 4-10 | — | 4-10 | 9-4 | 8-12 |
| Seth | — | ck(4) 3-7 | ck(3) 2-7 | — | ck 3-7 | ck 3-7 | ck 4-10 | ck 4-10 |
| Jonathon | 5-10 | 4-7 | 4-7 | — | — | 4-7 | 2-8 | 5-10 |
| Mark | — | — | — | — | — | — | 9-7 | — |
| Sara | 7-11 | 8-1 130-430 | 8-2 | 8-1 130-430 | 8-2 | 8-1 130-430 | — | 7-11 |
| Steve | — | 7-4 | 7-4 | — | 7-4 | 7-4 | 7-4 | 7-3 |
| Jim | 7-3 | 7-4 | 7- | 7-4 | 7-4 | 7-4 | — | — |
| Jordan | — | — | 9-4 | 9-4 | 9-4 | 7-12 1230-3 | — | — |
| Tim | | | | | | | | |

EXHIBIT 2

# Employee Schedule

## MAY

| DEPARTMENT<br>NAME | 1<br>SUNDAY | 2<br>MONDAY | 3<br>TUESDAY | 4<br>WEDNESDAY | 5<br>THURSDAY | 6<br>FRIDAY | 7<br>SATURDAY | 8<br>SUN |
|---|---|---|---|---|---|---|---|---|
| ELijAh | 12-5 | 4-10 | — | — | 4-7 | 4-10 | 2-8 | 8-12 |
| Zach | X | X | X | X | X | X | OFFICE 230 1030 | OFFICE 230 1030 |
| Jacob | OFFICE 230 1030 | OFFICE 4-1030 | — | 4-10 | OFFICE 4-1030 | — | 7-2 | 12-5 |
| Devan | 8-12 | 4-7 | 4-10 | 4-7 | X | X | X | 5-10 |
| Seth | ck 4-10 | ck 3-7 | ck-4 2-7 | — | ck 3-7 | ck 4-10 | X | X |
| Jonathon | 5-10 | — | 4-7 | — | 4-10 | 4-7 | 4-10 | — |
| Mark | — | — | — | — | — | — | 9-4 | — |
| Jordan | — | 8-3 | 7-2 | 9-4 | 9-4 | 7-12 1230-3 | — | — |
| Tim | — | | | | | | | |
| Sara | 7-11 | 8-1 130-430 | 8-2 | 8-2 | 8-1 130-430 | 8-1 130-430 | — | 7-11 |
| Steve | 7-3 | 7-4 | — | 7-4 | 7-4 | 7-4 | — | — |
| Jim | — | 7-4 | 7-4 | — | 7-4 | 7-4 | 7-4 | 7-3 |

## Employee Schedule

**MAY**

| NAME | SUNDAY 8 | MONDAY 9 | TUESDAY 10 | WEDNESDAY 11 | THURSDAY 12 | FRIDAY 13 | SATURDAY 14 | SUN 15 |
|---|---|---|---|---|---|---|---|---|
| Zach | OFFICE 230 1030 | — | OFFICE 4-1030 | 4-10 | — | 4-10 | — | OFFICE 230 1030 |
| Jacob | 12-5 | X | X | OFFICE 4-1030 | OFFICE 4-1030 | X | OFFICE 230 1030 | — |
| Devan | 5-10 | — | 4-7 | — | 4-7 | — | 7-2 | 8-12 |
| Seth | X | 4-10 | ck-4 2-7 | — | 4-10 | ck 3-7 | 9-4 | 5-10 |
| Jonathon | — | 4-7 | 4-10 | 4-7 | — | 4-8 | 2-8 | 12-5 |
| Mark | — | — | — | — | — | | 4-10 | — |
| Jordan | — | 8-3 | 7-2 | 9-4 | 9-4 | 7-12 1230-3 | — | — |
| Tim | — | — | — | 4-10 | — | 4-10 | 4-10 | 5-10 |
| Sara | 7-11 | 8-1 130-430 | 8-2 | 8-1 130-430 | 8-1 130-430 | 8-2 | — | 7-11 |
| Steve | — | 7-4 | 7-4 | — | 7-4 | 7-4 | 7-4 | 7-3 |
| Jim | 7-3 | 7-4 | — | 7-4 | 7-4 | 7-4 | — | — |
| Elijah | 8-12 | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

# Employee Schedule

**MAY**

| DEPARTMENT NAME | 15 SUNDAY | 16 MONDAY | 17 TUESDAY | 18 WEDNESDAY | 19 THURSDAY | 20 FRIDAY | 21 SATURDAY | 22 Sun TOTAL |
|---|---|---|---|---|---|---|---|---|
| ZACH | OFFICE 230 1030 | — | OFFICE 4-1030 | — | 4-10 | — | OFFICE 230 1030 | — |
| JACOB | — | X | X | OFFICE 4-1030 | OFFICE 4-1030 | 4-10 | 7-2 | OFFICE 230 1030 |
| DEVAN | 8-12 | 4-10 | — | 4-10 | — | — | 4-10 | 8-12 |
| SETH | 5-10 | 4-7 | 9-4 | — | 4-7 | 9-4 | — | — |
| JONATHON | 12-5 | — | 4-10 | 4-7 | — | — | 9-4 | 12-5 |
| MARK | — | — | — | — | — | — | — | — |
| JORDAN | — | 8-3 | 7-2 | 9-4 | 9-4 | 7-2 | — | — |
| TIM | 5x0 | — | 4-7 | — | — | 4-7 | 2-8 | 5-10 |
| SARA | 7-11 | 8-1 130-430 | 8-2 | 8-1 130-430 | 8-1 130-430 | 8-2 | — | 7-11 |
| STEVE | 7-3 | 7-4 | — | 7-4 | 7-4 | — | — | — |
| JIM | — | 7-4 | 7-4 | — | 7-4 | 7-4 | 7-4 | 7-3 |

# Employee Schedule

Mem. DAY ↓

MAY

| DEPARTMENT NAME | 22 SUNDAY | 23 MONDAY | 24 TUESDAY | 25 WEDNESDAY | 26 THURSDAY | 27 FRIDAY | 28 SATURDAY | 29 SUN | 30 MON |
|---|---|---|---|---|---|---|---|---|---|
| Zach | 230 1030 | OFFICE 4-1030 | 4-7 | 4-10 | 4-10 | X | X | X | OFFICE 930 1030 |
| Jacob | OFFICE 930 1030 | — | 4-10 | OFFICE 4-1030 | OFFICE 4-1030 | X | X | OFFICE 930 1030 | 10-4 |
| Devan | 8-12 | 4-10 | — | — | X | 4-10 | 2-9 | 7-12 | — |
| Seth | — | 3-7 | 9-4 | — | — | 9-4 | 9-4 | — | ck 4-10 |
| Jonathon | 12-5 | — | — | 4-7 | — | 4-8 | 4-10 | 5-10 D-5 | 4-10 |
| Mark | — | — | — | — | — | — | 7-2 | — | — |
| Jordan | — | 8-3 | 7-2 | 9-4 | 9-4 | 7-12 1230-4 | — | — | 8-3 |
| Tim | 5-10 | — | — | — | 4-8 | X | — | 12-5 5-10 | 3-7 |
| Sara | 7-11 | 8-1 130-430 | 8-2 | 8-1 130-430 | 8-2 | 8-1 130-430 | — | 7-11 | 7- |
| Steve | — | 7-4 | 7-4 | — | 7-4 | 7-4 | 7-4 | 7-3 | 7- |
| Jim | 7-3 | 7-4 | — | 7-4 | 7-4 | 7-4 | 7- | — | 7- |

*mem.*
*DAY*

# Employee Schedule

*MAY* — *JUNE*

| DEPARTMENT NAME | 29 SUNDAY | 30 MONDAY | 31 TUESDAY | WEDNESDAY | THURSDAY | 3 FRIDAY | 4 SATURDAY | 5 SUN |
|---|---|---|---|---|---|---|---|---|
| | | | EMPLOYEE SCHEDULE | 2 | | WEEK STARTING | | |
| ZACH | X | OFFICE 230 1030 | 9-4 | 4-10 | 9-4 | — | 4-10 | 12-5 |
| JACOB | OFFICE 230 1030 | 10-4 | 7-29 | — | — | 7-2 | 7-2 | 8-12 |
| DEVAN | 7-12 | — | X | X | 4-10 | X | — | X |
| Seth | — | ck 4-10 | — | 8-3 | 4-7 | 9-4 | ck 9-4 | — |
| JONATHON | 5-10 | 4-10 | 4-7 | — | — | 4-10 | — | — |
| MARK | — | — | — | — | — | — | — | — |
| JORDAN | — | 8-3 | 9-4 | 3-7 | — | — | 2-8 | — |
| TIM | 12-5 | 3-7 | 4-10 | — | — | 2-8 | 9-4 | 5-10 |
| SARA | 7-11 | 7- | 8-2 | 230 1030 | 9-1030 4-1030 | 8-2 | — | 7-11 |
| Steve | 7-3 | 7- | — | 7-4 | 7-4 | 7-4 | — | — |
| Jim | — | 7- | 7-4 | — | 7-4 | 7-4 | 7-4 | 7-3 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

# JUNE

## Employee Schedule

SAT
SALE

| DEPARTMENT NAME | 5 SUNDAY | 6 MONDAY | 7 TUESDAY | 8 WEDNESDAY | 9 THURSDAY | 10 FRIDAY | 11 SATURDAY | 12 SUN TOTAL |
|---|---|---|---|---|---|---|---|---|
| ZACH | 12·5 | OFFICE 4-1030 | X | — | 9-4 | 7-2 | 3-10 | X |
| JACOB | 8-12 | — | OFFICE 4-1030 | 8-3 | X | 7-2 | 7-2 | 8—12 |
| DEVAN | X | X | 4-10 | X | — | X | 2-9 | X |
| SETH | — | 3-7 | 9-4 | — | 4-7 | — | 8-3 | — |
| JONATHON | — | 4-10 | — | 4-10 | — | 4-10 | — | 5-10 |
| JORDAN | — | 8-3 | 7-2 | 3-7 | — | 2-8 | — | — |
| TIM | 5-10 | — | 4-7 | — | 4-10 | 4-10 | 10-5 | 12-5 |
| MARY | 230 1030 | — | — | 230 1030 | 230 1030 | 230 1030 | 230 1030 | — |
| SARA | 7-11 | 8-1 130-430 | 8-2 | — | 8-1 130-430 | 8-3 | 7-2 | 7-11 |
| STEVE | — | 7-4 | 7-4 | — | 7-4 | 7-4 | 7-4 | 7-3 |
| JIM | 7-3 | 7-4 | — | 7-4 | 7-4 | 7-4 | 7-4 | — |

# June

## Employee Schedule

EMPLOYEE SCHEDULE

**WEEK STARTING**

| DEPARTMENT NAME | 12 SUNDAY | 13 MONDAY | 14 TUESDAY | 15 WEDNESDAY | 16 THURSDAY | 17 FRIDAY | 18 SATURDAY | 19 SUN |
|---|---|---|---|---|---|---|---|---|
| Zach | X | 7-2 | 7-2 | X | 7-2 | 9-4 | — | 12-5 |
| Jacob | 8-12 | OFFICE 3-1030 | X | 9-4 | — | 7-2 | 9-4 | 7-2 |
| Devan | X | X | 4-10 | X | 4-10 | X | 3-10 | X |
| Seth | — | — | — | — | — | 2-8 | 4-10 | - |
| Jonathon | 5-10 | X | 2-7 | 4-7 | — | 4-10 | 2-8 | — |
| Jordan | — | 2-7 | 9-4 | X | | 2-8 | — | 5-10 |
| Tim | 10-5 | 4-10 | — | 4-10 | 2-7 | — | 7-2 | 8-12 |
| Mary | — | — | 230 1030 | 230 1030 | 230 1030 | 230 1030 | 230 1030 | 230 1030 |
| Sara | 7-11 | 8-1 130-430 | 8-2 | 8-1 130-430 | 8-2 | 8-1 130-430 | — | 7-11 |
| Steve | 7-3 | 7- | 7-4 | 7- | 7-4 | 7-4 | 7- | |
| Jim | — | | VACATION | | — | | | |

# JUNE

# Employee Schedule

19  20  21  22  23  24  25  26

| DEPARTMENT NAME | SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY | SUN TOTAL |
|---|---|---|---|---|---|---|---|---|
| ZACH | 12-5 | 3-7 | 7-2 | 8-3 | — | 7-2 | — | OFFICE 230-10:30 |
| JAKE | 7-2 | 300 1030 OFFICE | 2-7 | X | 8-3 | X | 8-3 | 8-12 |
| DEVAN | X | X | 4-10 | X | 4-10 | X | X | X |
| SETH | — | 8-3 | 9-4 | | | | | |
| JONATHON | — | 4-10 | — | 3-7 | — | 2-7 | 9-4 | 12-5 |
| JORDAN | 5-10 | — | — | 4-10 | — | 4-10 | 3-8 | — |
| TIM | 8-12 | X | X | X | 3-7 | 9-4 | 4-10 | 5-10 |
| MARY | 230 1030 | — | — | 230 1030 | 230 1030 | 230 1030 | 230 1030 | — |
| SARA | 7-11 | 8-1 130-430 | 8-1 SICK | 8-1 130-430 | 8-2 | 8-1 130-430 | — | 7-11 |
| STEVE | — | 7-4 | — | 7-4 | 7-4 | 7-4 | 7-4 | 7-3 |
| JIM | — | 7-4 | 7-4 | 7-4 | X | 7-4 | — | — |

# June

## Employee Schedule

## July

| DEPARTMENT | 26 | 27 | 28 EMPLOYEE SCHEDULE | 29 | 30 | 1 WEEK STARTING | 2 | 3 SUN | 4 MON |
|---|---|---|---|---|---|---|---|---|---|
| NAME | SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY | TOTAL | |
| Zach | OFFICE 830 1030 | 8-3 | 7-2 | — | CK 4-10 | 8-3 | 8-3 | ck 7-2 | OFFICE 830 1030 |
| Jacob | 8-12 | OFFICE 930 1030 | X | — | 9-4 | 7-2 | 7-2 | 7-1 | 8-3 |
| Devan | X | X | 4-10 | X | — | X | 3-10 | X | X |
| Jonathon | 12-5 | 3-7 | — | 4-10 ok | 3-7 | 4-10 | — | 5-10 | 3-7 |
| Jordan | — | — | 9-4 | 3-8 530 | — | 2-7 | 8-5 | — | 3-7 |
| Tim | 5-10 | 4-10 | — | 8-3 | 4-10 | 4-10 | 2-9 | 5-10 | 9-9 |
| LJ | — | 4-10 | 2-7 | 4-10 | — | 3-9 | 11-5 | 12-5 | 4-10 |
| Mary | — | — | 230 1030 | 230 1030 | 230 1030 | 230 1030 | 230 1030 | 230 1030 | — |
| Sara | 7-11 | 8-1 130-430 | 8-5 | — | 8-3 | 8-1 130-430 | 7-2 | 7-4 | 7- |
| Steve | 7-3 | 7-4 | — | 7-11 | 7-4 | 7-4 | — | — | 7- |
| Jim | — | 7-4 | 7-11 | — | 7-11 | 7-4 | 7-4 | 7-3 | 7- |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

# July

## Employee Schedule

**DEPARTMENT**

**WEEK STARTING**

| NAME | 3 SUNDAY | 4 MONDAY | 5 TUESDAY | 6 WEDNESDAY | 7 THURSDAY | 8 FRIDAY | 9 SATURDAY | 10 SUN |
|---|---|---|---|---|---|---|---|---|
| ZACH | CK 7-2 | OFFICE 230 1030 | 7-2 | — | 9-T | 7-2 | 7-2 | 4-10 |
| JACOB | 7-1 | 8-3 | OFFICE 230 1030 | 9-4 | 9-4 | 7-2 | — | 7-3 |
| DEVAN | X | X | 4-10 | X | 4-10 | X | 4-10 | X |
| JONATHON | — | 3-7 | 9-4 | 3-7 | — | 3-7 | 9-4 | 1-7 |
| TIM | 5-10 | 9-4 | — | 4-10 | — | 8-3 | 2-8 | 7-1 |
| LJ | 12-5 | 4-10 | 2-7 | — | 4-7 | 4-10 | 4-10 | 11-4 |
| SETH | | | 4-10 | 3-7 | | 4-10 | 4-9 | |
| MARY | 230 1030 | — | — | 230 1030 | 230 1030 | 230 1030 | 230 1030 | |
| SARA | — | 7- | 8-1 130-430 | 8-1 130-430 | 8-1 130-430 | 8-1 1030 | | |
| STEVE | — | 7- | 7-4 | — | 7-4 | 7-4 | 7-11 | 7-11 |
| JIM | 7-3 | 7- | — | 7-4 | 7-4 | 7-4 | — | — |

wk1

# Employee Schedule

July

| DEPARTMENT | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| | | | EMPLOYEE SCHEDULE | | | WEEK STARTING | | Sun |
| NAME | SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY | TOTAL |
| ZACH | 4-10 | — | 8-3 | 8-3 | 7-2 | 8-3 | — | — |
| Jacob | 7-3 | office 230 1030 | 7-2 | — | — | 7-2 | 7-2 | 8-3 |
| Devan | X | X | 4-10 | X | 4-10 | X | 3-10 | X |
| Jonathon | 1-7 | 4-10 | — | 3-10 | — | 4-10 | — | 10-4 |
| Tim | 7-1 | 7-2 | — | 12-7 | — | 4-10 | 8-3 | 4-10 |
| LJ | 11-4 | — | 2-8 | — | — | 10-5 | 2-9 | 3-7 |
| Seth | — | 2-8 | — | — | 2-8 | 3-9 | 8-9 | 3-9 |
| Mary | — | — | 230 1030 | 230 1030 | 230 1030 | 230 1030 | 230 1030 | 230 1030 |
| Sara | 7-11 | 8-1 130-430 | 8-2 | 8-1 130-430 | 8-2 | 8-1 130-430 | — | 7-11 |
| Steve | | | VACATION | | | | | |
| Jim | — | 7- | 7-4 | 7- | 7-4 | 7-4 | 7-4 | 7-3 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

wk2

JuLY

## Employee Schedule

| DEPARTMENT | 17 | 18 | 19 EMPLOYEE SCHEDULE | 20 | 21 | 22 WEEK STARTING | 23 | 24 Sun |
|---|---|---|---|---|---|---|---|---|
| **NAME** | **SUNDAY** | **MONDAY** | **TUESDAY** | **WEDNESDAY** | **THURSDAY** | **FRIDAY** | **SATURDAY** | **TOTAL** |
| ZACh | | | | | | | | |
| JACob | 8-3 | office 930 1030 | 7-2 | 8-3 | — | 7-2 | X | X |
| DEVAN | X | X | 4-10 | X | sick 11-10 | X | 4-10 | X |
| JoNAthoN | 4-10 | — | 9-4 | — | 8-3 | 8-3 | 7-2 | 11-4 |
| Tim | 10-4 | 8-3 | 8-3 | — | — | 3-10 | 9-4 | 8-3 |
| LJ | 3-7 | 3-7 | — | 4-10 | 3-7 | — | 2-8 | 4-10 |
| Seth | | 4-10 | 3-7 | 3-7 | — | 2-8 | — | 3-7 |
| MARY | 930 1030 | — | 220 1030 | 230 1030 | 220 1030 | 230 1030 | — | — |
| SARA | 7-11 | 8-1 130-Bo | 8-2 | 7-10 1230-330 | 8-2 | 8-1 130-130 | — | X |
| Steve | — | 7-4 | 7-4 | — | 7-4 | 7-4 | 7-4 | 7-3 |
| Jim | 7-3 | 7-4 | — | 7-4 | 7-4 | 7-4 | — | — |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |