E-FILED
Monday, 20 August, 2007   04:41:50 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JORDAN T. BANTON,                       ) | |
|                          **Plaintiff,**     ) | |
|     v.                                      ) | |
|                                          ) | |
| MARY DOWDS, individually and as an   ) | |
| agent of ARTHUR I.G.A. FOODLINER,   ) | |
| ARTHUR I.G.A. FOODLINER,              ) | Case No.   06-2211 |
| MICHAEL GOODMAN, Arthur Chief of     ) | |
| Police, individually and officially, and   ) | |
| ROGER HANSEN, Arthur police officer,  ) | |
| individually and officially,              ) | |
|                                          ) | |
|                          **Defendants.**     ) | |

# REPORT AND RECOMMENDATION

In October 2006, Plaintiff Jordan Banton filed a Complaint (#1) against Defendants, Mary Dowds, Arthur I.G.A. Foodliner, and Roger Hansen, alleging violations of federal and state law. Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331.

In January 2007, Plaintiff filed an Amended Complaint (#2) adding Michael Goodman as a defendant and adding additional claims. In February 2007, Defendant Arthur I.G.A.[1] (hereinafter "IGA") filed a Motion To Dismiss (#3) and in March 2007, Defendants Hansen and Goodman filed a Motion To Dismiss (#14). Before the Court ruled on those motions, Plaintiff filed a Motion for Leave To File Second Amended Complaint (#17). He subsequently filed a Motion for Leave To File Third Amended Complaint and Response to Defendants' Objection to Plaintiff's Motion To Amend Complaint (#19). In light of Plaintiff's subsequent motion, the Court mooted his earlier Motion for Leave To File Second Amended Complaint (#17). After considering Defendants' objections to the Motion for Leave To File a Third Amended Complaint

---

[1] Defendant actually filed the motion as "Kirby Foods, Inc., d/b/a Arthur I.G.A. Foodliner, incorrectly sued as Arthur I.G.A. Foodliner." (#3, p. 1.)

(#19), the Court denied the motion, stating it preferred to address the motions to dismiss directed toward the Amended Complaint (#2).

The Court has now considered Defendant IGA's Motion To Dismiss (#3). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant's Motion To Dismiss **(#3)** be **GRANTED in part** and **DENIED in part**.

### I. Background

Plaintiff alleges in his complaint that he was a victim of sexual harassment by Defendant Dowds, the night manager at IGA. In addition, he has alleged constitutional and state law claims against Defendant Hansen, a police officer for the Arthur Police Department, and Defendant Goodman, the Arthur Police Department chief of police. Hansen and Goodman became involved in this case because Dowds told the police that Plaintiff had stolen items from the IGA store.

The following background is based on the Amended Complaint (#2). At relevant times, Plaintiff worked for IGA. Mary Dowds also worked for IGA as night manager. On June 29, 2005, Dowds told Plaintiff to clean the break room. She then came into the break room and told Plaintiff to sit and have a cigarette. Dowds sat down very close to Plaintiff and placed her hand inside his pants on his genitals. Plaintiff declined Dowds' advances by pushing her and informing her that he would report her to the authorities. Dowds then unzipped her pants and exposed her genitals to him. Plaintiff began to leave the room and Dowds ordered him to leave work for the day. Plaintiff reported Dowds' action to the police.

On June 29, 2005, Dowds filed a complaint with the Arthur Police Department alleging that Plaintiff had stolen items from the IGA store. Defendant Hansen, a police officer, investigated Dowds' complaint. He wrote in his report that he spoke with Dowds who told him that she saw Plaintiff commit the alleged theft between 7:30 and 8:00 p.m. on June 25, 2006 (*sic*). Plaintiff also alleges as follows:

> 4. Hansen fabricated evidence in his police report regarding Kauffman driving Plaintiff to his residence; Kauffman [(apparently one of Plaintiff's friends)] and his wife Ruth drove Plaintiff to the house of another friend of Plaintiff on June 29, 2005–Hansen fabricated this in order to contradict the truthful information Plaintiff told his mother, that the friend whom Kauffman left Plaintiff with actually drove him (Plaintiff) home. Hansen reported the apparent contradiction in his police report.
>
> 5. Hansen also withheld evidence which would have exculpated Plaintiff of the crime of theft, in that Hansen omitted in his report the fact that Kauffman was with Plaintiff, in his (Kauffman's) house and car, during the time from 7:30 pm to 8 pm on June 29, 2005, the exact same time that Dowds alleged (and Hansen wrote in his report) Plaintiff was present at the Arthur IGA store committing the theft.

(#2, ¶¶ 4-5.) Plaintiff alleges that Hansen acted willfully and wantonly when he fabricated evidence and withheld exculpatory evidence. Plaintiff also alleges that Defendant Goodman, the chief of police, approved Hansen's willful and wanton conduct.

As a result of Hansen's report, the Moultrie County State's Attorney filed charges against Plaintiff for theft. Plaintiff was summoned to court under penalty of arrest and ordered on bond to return to court for arraignment, and again for pretrial proceedings and the trial. On October 31, 2005, a jury returned a verdict of not guilty.

Plaintiff's Amended Complaint (#2) alleges eight counts as follows. Count I, against Defendant Hansen, alleges that Hansen's fabrication of evidence and withholding of exculpatory evidence resulted in an unconstitutional seizure of Plaintiff in violation of the Fourth Amendment because Plaintiff was summoned to court under penalty of arrest and ordered on bond to return to court for arraignment, pretrial, and trial proceedings. Counts II and III, against Hansen and Defendant Goodman, respectively, allege malicious prosecution. Count IV, against Defendant Dowds, alleges sexual harassment in violation of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII") (42 U.S.C. § 2000e *et seq*.). Count V, against IGA, alleges liability for sexual harassment in violation of Title VII. Count VI, against IGA, alleges retaliatory discharge in violation of Title VII. Counts VII and VIII, against Dowds and IGA, respectively, allege malicious prosecution.

## II.  Standard

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case.  *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).  When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party.  *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997).  The Court should dismiss the claim only if the nonmoving party cannot prove any set of facts consistent with the allegations of the complaint that would entitle him to relief.  *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

## III.  Analysis

Defendant argues that the Court should dismiss the claims against it for the following reasons:  (1) the statute of limitations bars the Title VII claims against IGA in Counts V and VI; and (2) the exclusivity provision of the Illinois Worker's Compensation Act (820 ILCS 305/11) bars Plaintiff's malicious prosecution claim in Count VIII.

The parties have filed various complaints, motions to amend, motions to dismiss, objections to the complaints, and responses to motions.  For example, Plaintiff responded to Defendant IGA's statute of limitations argument in its Motion for Extension of Time To File Reply to Defendant IGA Foodliner's Motion To Dismiss (#8) and Defendant IGA addressed Plaintiff's response in its Response to Motion for Leave To File Third Amended Complaint (#21).  In ruling here on Defendant IGA's motion to dismiss, the Court will consider all arguments raised by the parties, regardless of the source, to the extent they relate to the allegations of the Amended Complaint (#2).  Plaintiff may present additional arguments, if any, in objections to this Report and Recommendation.

### A.  Statute of Limitations

Defendant first argues that the statute of limitations bars Plaintiff's Title VII claims in Counts V (sexual harassment) and VI (retaliatory discharge).  Specifically, Defendant contends that (1) Plaintiff filed his discrimination charge with the Equal Employment Opportunity

Commission (hereinafter "EEOC") on November 2, 2006, well after the 300-day limitation imposed by 42 U.S.C. § 2000e-5(e)(1); and (2) even if the limitations period is calculated based on the May 5, 2006, charging date, the statute of limitations still bars the claims because the alleged events giving rise to the Title VII claims occurred on June 29, 2005.

Plaintiff responds that his November 2, 2006, charge relates back to his May 5, 2006, charge and the 300-day limitations period should be calculated from the May 2006 date. *See Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994) (stating that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge . . . . Such amendments . . . will relate back to the date the charge was first received.") In addition, he contends that he first became aware of the Title VII violations within 300 days of May 5, 2006.

Title VII of the Civil Rights Act of 1964, as amended, establishes "an integrated, multistep enforcement procedure" that enables the EEOC to detect and remedy various discriminatory employment practices. *E.E.O.C. v. Shell Oil Co.,* 466 U.S. 54, 62 (1984). The process begins when an employee files a charge with the EEOC alleging that an employer has engaged in a discriminatory employment practice. *Id.* In deferral states such as Illinois, the charge must be filed within 300 days of the discriminatory act. *See Gilardi v. Schroeder,* 833 F.2d 1226, 1230 (7th Cir. 1987).

Section 2000e-5(b) requires that a charge "shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires"; however, the substance and form of the charge is left to the EEOC's discretion. *See* 42 U.S.C. §2000e-5(b). The "oath or affirmation" requirement is a "technical rather than mandatory and substantive provision" as long as the charge is pending before the EEOC, that is, during the filing and processing of a charge by the EEOC. *See Philbin v. Gen. Elec. Capital Auto Lease, Inc.,* 929 F.2d 321, 324 (7th Cir. 1991). However, the statutory requirement becomes a mandatory, substantive provision that is a prerequisite to filing a Title VII lawsuit once the EEOC has issued a right-to-sue letter and thereby terminated its investigation and conciliation

processes. *Bacon v. Allstate Ins. Co.*, No. 93 C 1701, 1995 WL 360736, *7 (N.D. Ill. June 14, 1995) (unreported).

Pursuant to its rule making authority, the EEOC promulgated and adopted a regulation that identified the minimum contents of a charge. *See* 29 C.F.R. § 1601.12(a). The regulation permits a complainant to amend a charge to cure a technical defect such as a failure to verify the charge and provides that the amendment relates back to the date the charge was first received. *Id.*; *Bacon*, 1995 WL 360736, at *8. In *Balazs v. Liebenthal*, the Fourth Circuit concluded that this regulation only applies to charges pending before the EEOC. Once the EEOC has closed its file, "there is no longer a charge pending before the EEOC which is capable of being amended." *Balazs*, 32 F.3d at 157. The EEOC regulation does not allow a private litigant to verify retroactively a previously unsworn charge of discrimination after the EEOC has issued a right-to-sue letter and a Title VII lawsuit has been filed. *Bacon*, 1995 WL 360736, at *8.

It is undisputed that Plaintiff filed a discrimination charge on May 5, 2006, and then again on November 2, 2006. After he filed the charge in May 2006, the EEOC asked Plaintiff's attorney to obtain Plaintiff's signature. The EEOC received the form with Plaintiff's signature on November 2, 2006, and apparently opened a new file. Tyrone Irvin, an EEOC Enforcement Supervisor, signed an affidavit stating that the signature document should have been incorporated into the file opened with the May 2006 charge. (Irvin affidavit, #17-3.) The Court concludes that May 5, 2006, is the date that Plaintiff filed his charge and the November 2006 charge relates back to May 2006.

The Court notes that Plaintiff's attorney stated in his letter to the EEOC (#8-2) and affidavit (#8-4, ¶ 6) that he had been informed that Plaintiff's case had been closed. Notwithstanding this reference to the case being closed, Mr. Irvin's affidavit stated that the November 2, 2006, charge was erroneously given a new charge number instead of being incorporated into the previous file. Thus, his affidavit indicates that, to the extent the file may have been closed, that "closing" constituted "administrative error." (#17-3.) Thus, from the EEOC's perspective, the administrative "closing" of the file did not restart the clock on the 300-

day limitations period.  Moreover, the case law indicates that a case is no longer "pending" with the EEOC for purposes of relating back a later-filed charge once the EEOC has issued a right-to-sue letter.  *See, e.g., Bacon*, 1995 WL 360736, at *8 (stating that the EEOC regulation does not allow a private litigant to verify retroactively a previously unsworn charge of discrimination *"after* the EEOC has issued a right to sue letter and a Title VII lawsuit was filed") (emphasis added).  Here, because the EEOC had not issued a right-to-sue letter and because the EEOC considered the November 2, 2006, charge to be part of the same case as the May 5, 2006, charge, the Court concludes that the EEOC case opened with the May 2006 charge was still pending at the time Plaintiff filed his verified charge in November 2006.  Accordingly, the Court will use the May 5, 2006, charge date when considering the 300-day limitations period.

Here, Plaintiff has raised two distinct Title VII claims, sexual harassment and retaliatory discharge.  The sexual harassment claims involve a single discrete act by Defendant Dowds on June 29, 2005, thus, the claims accrued on June 29, 2005.  The Court notes that Plaintiff alleged that he told Dowds at the time of the alleged harassment that he would report her to the authorities.  Even without this allegation, given the outrageous nature of the alleged conduct, it is reasonable to expect that Plaintiff would have known his rights had been violated at the time of the alleged harassment.  May 5, 2006, is 310 days after June 29, 2005.  Because the sexual harassment claims accrued on June 29, 2005, Plaintiff's charge filed on May 5, 2006, was not timely filed for purposes of the 300-day time limit.  Accordingly, the Court recommends dismissing the sexual harassment claim against Defendant IGA.  The Court notes that, although the same reasoning applies to the sexual harassment claim against Defendant Dowds, Dowds has not filed a motion to dismiss that claim.

In his retaliatory discharge claim, Plaintiff alleges that Defendant informed him on July 20, 2005, that his employment had ended.  In the employment context, an injury accrues and the statute of limitations begins to run when the adverse employment decision is "made and communicated" to the employee.  *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir. 1990) (quoting *Del. State Coll. v. Ricks,* 449 U.S. 250, 258 (1980)).

Defendant IGA argues that Plaintiff was fired on June 29, 2005, and provided evidence to support this argument. However, this raises a factual dispute that the Court cannot consider when ruling on a motion to dismiss. In his Amended Complaint (#2), Plaintiff alleged that he was informed that his employment was terminated on July 20, 2005. May 5, 2006, is within 300 days of July 20, 2005, therefore, based solely on the allegations of Plaintiff's complaint, the Court concludes that he timely filed his retaliatory discharge claim. Accordingly, the Court recommends denying the motion to dismiss the retaliatory discharge claim at this time.

### B. Workers' Compensation Act

Defendant next argues that the Workers' Compensation Act provides the exclusive remedy for an employee's claim for injuries against his employer. *See* 820 ILCS 305/5(a). In support, Defendant relies on *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222 (Ill. 1990), in which the Illinois Supreme Court held that the exclusivity provisions of the Workers' Compensation Act barred an employee's *respondeat superior* claim against his employer for malicious prosecution. The *Meerbrey* court held that the plaintiff's injury from malicious prosecution was "accidental" from the perspective of both the injured employee and the employer. *Id.* at 1226.

Illinois courts have consistently read the Workers' Compensation Act as barring suits against employers for injuries that one employee intentionally inflicts upon another. *Al-Dabbagh v. Greenpeace, Inc.*, 873 F.Supp. 1105, 1112-14 (N.D. Ill. 1994) (citing *Meerbrey*, 564 N.E.2d at 1226). Two recognized exceptions to that principle exist: (1) where an employer expressly authorizes the injurious conduct, and (2) where an assailant is considered to be the employer's alter ego. *Id*; *Meerbrey*, 564 N.E.2d at 1226 ("The exclusivity provisions will not bar a common law cause of action against an employer, however, for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer.").

Here, Plaintiff's malicious prosecution claim is based solely on the doctrine of *respondeat superior*; he does not suggest that Defendant IGA possessed a specific intent to

8

injure him, nor can such intent be reasonably inferred. Furthermore, Plaintiff's contention that IGA ratified or adopted Dowd's conduct by retaining Dowds as an employee or by failing to repudiate her conduct is unpersuasive. *See Al-Dabbagh*, 873 F.Supp. at 1112 (stating that a plaintiff must demonstrate that an employer possessed specific intent to inflict the injury on him to show that it adopted or authorized Dowd's conduct). Thus, Plaintiff's claim does not fall within the first exception to the exclusive remedy bar.

Plaintiff's malicious prosecution claim does not fall within the alter ego exception either. The alter ego doctrine "fastens liability on the individual who uses the corporation merely as an instrumentality to conduct his own personal business." BLACK'S LAW DICTIONARY 77-78 (6th ed. 1990). Here, Ms. Dowd was the night manager of IGA. She was not in a position to treat the Defendant corporation as "a mere conduit for the transaction of [her] own private business." *Id.* at 78.

Because neither of the exceptions to the exclusivity provisions of the Workers' Compensation Act apply here, the Court concludes that the Workers' Compensation Act provides the exclusive remedy for Plaintiff's malicious prosecution claim against IGA. Therefore, the Court recommends granting Defendant's motion to dismiss this claim.

### IV.  Summary

For the reasons stated above, this Court recommends that Defendant IGA's Motion To Dismiss **(#3)** be **GRANTED** as to the sexual harassment and malicious prosecution claims against IGA and **DENIED** as to the retaliatory discharge claim.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report

and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 20th day of August, 2007.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE